I think the main issue that we start with in this case is how best to define the contours of habeas corpus jurisdiction in the context of challenges to a prison disciplinary violation versus where does it become a 1983 jurisdictional issue. And I think that the treatment that this case received from the district court and which Respondent urges here is that it treats habeas jurisdiction as an all-or-nothing proposition, as a very bright-line rule. The only bright-line rule that has been given by the Supreme Court and by this Court is whether or not the resolution in the Petitioner's favor is going to necessarily or is going to likely accelerate his release on parole or for whatever other reason. It may be through a parole of good time credits. Now, in this circuit, the standards have always been this likelihood rule. Through the decisions in Bostic v. Carlson, Ramirez v. Galazza, and also in Dockin v. Chase, more recently the Court has used such language as whether or not there to determine habeas jurisdiction, we look at what is the likelihood that a favorable resolution of this challenge is going to accelerate the prisoner's release, most usually on parole, but the determining factor has been treated by the district court here and by Respondent on appeal as to whether or not there is a lack of good time, a loss of good time credits. And in Mr. Richardson's case, there was no such loss because there was a procedural default in the amount of time that it took for him to get his prison disciplinary hearing. Now, taken together, all of these holdings in this Court demonstrate a rule that the prisoner can seek habeas relief to expunge a disciplinary violation as long as it is likely that the length of his imprisonment will be affected. And I think that that's the situation that we have here, is that we have one of these cases where the Supreme Court, Mohammed v. Close, referred to them as kind of a hybrid case, where you have this somewhat not-so-bright-line case of whether or not, okay, if we do a way, if we pull this 115 from the prisoner's record, is he automatically going to walk out the prison gate. That's rarely the case. That's rarely the black-and-white situation that we're presented with. And here we have a case where the Supreme Court, Mohammed v. Close, referred to them as kind of a hybrid case of whether or walk out the prison And that sort of thing is pretty much an ending point. That is a determinative point in the parole board's consideration. If a prisoner's got this kind of issue on his central file, he's not going to get How do you distinguish the Supreme Court's decision in Sandin? Well, Your Honor, Sandin dealt with, did deal with due process violations in a disciplinary hearing, but it was a 1983 case where the court wasn't considering habeas corpus jurisdiction at all. They were looking at the basic denial of procedural due process in the context of the hearing that was provided, the administrative hearing that was provided in the disciplinary proceeding in the prison. They didn't get to the point of whether there was actually habeas corpus jurisdiction because of the, because whether, in that case, I believe, there was no loss of good time credits at issue. So they didn't reach the, they didn't reach the issue of whether habeas jurisdiction would exist. They were looking at it from a 1983 standpoint. But it did state that even though it could be one factor among many in considering parole, just the fact that it's one factor isn't enough. Well, Your Honor, I think that is true. The Sandin court did recognize that, is that there is only, that there are kind of a wider panoply of factors affecting whether the prisoner is going to get determined suitable for parole. However, I think in subsequent cases, most specifically Mohamed and also the three that I mentioned from this Court, there has been a recognition that we look at the scale of, it can be a factual determination on a case-by-case basis as to whether a particular violation is going to, if the expungement is going to accelerate the likelihood that the prisoner is going to be released. Well, was it such a bad violation he touched his arm? That was it, wasn't it? Well, that's, well, Mr. Richardson contends otherwise. He contends that he was trying to hold his coffee against himself with his free arm while he pulled out his inmate ID to show to the guard, and the guard, without any kind of instigation at all, reached across and grabbed his arm, and Mr. Richardson turned away to try to keep everybody from getting spilled, having hot coffee spilled on them. That, and then he got taken down by that guard and by several other guards who assisted. That, what the 115 was for, was for assault on a correctional officer. It was not just for the refusal of the order to, you know, throw the coffee out before he got to the chow hall. It was for assault on a correctional officer. And if that's in the prisoner's C file, the likelihood that he's going to be denied parole is, I would submit virtual certainty. Has he come up for parole? I believe that he came up. His hearing calendar came up one other time since this incident. However, he stipulated to have a denial. And that's a practical effect of what happens with a case like this. If you have a habeas case, if a prisoner has a habeas going, typically that's the practice, is they stipulate to a certain period of denial. Are you barred from filing? This is a 1983 case. You're not barred by heck, correct, because he didn't lose any good time? No, I don't believe that he isn't. In fact, Mr. Richardson does have a 1983 case in the Eastern District, and that's already been filed. I'm sorry? Already filed. Yes, it's already filed. It's proceeding through discovery. However, inasmuch as this is a subject matter jurisdictional issue, that can be attacked at any time. And I would be concerned about the effect of an outcome where Mr. Richardson didn't have a chance to expunge the 115 for habeas corpus, and then he might be barred under heck from proceeding at some point in the future on his 1983 claim. And if there are no other questions, may I reserve the balance?  Thank you, Your Honor. May it please the Court, Christopher Wrench, Deputy Attorney General, on behalf of Applee. The Supreme Court and this Court have recognized that claims which do not necessarily impact the factor duration of an inmate's confinement are outside the core of habeas corpus and must be brought, if at all, in a Section 1983 case. Mr. Richardson's challenge to disciplinary action here, even if successful on the merits, will not necessarily accelerate his release from prison or guarantee his parole. Thus, the District Court properly dismissed his claims, and the judgment below should be affirmed. As this Court recognized in Ramirez v. Galazza, habeas corpus jurisdiction is absent when a claim does not necessarily impact or accelerate a prisoner's release. The Supreme Court recently in Skinner v. Switzer expressly held that its earlier decision, Wilkinson v. Dodson, said in no uncertain terms that claims which do not necessarily impact the factor duration must be brought, if at all, in a Section 1983 case. In here, expunging the 115, even assuming Mr. Richardson could prevail on the merits, would not guarantee his release on parole. As the Court has already indicated, it is simply one of many factors that the parole board will consider. How the board will weigh it is speculative at this point, and therefore, the habeas jurisdiction is not met. This situation is akin to the ruling that the Supreme Court had in Sandin v. Connor, as well as this Court's earlier decision in Wilson v. Terhune, where it found that the link between simply one disciplinary adjudication in an inmate's file is too speculative at a possible future parole hearing to warrant Federal review. And the prisoner would have a right to explain what his side of the story, what happened in a disciplinary hearing, I mean, a parole hearing, correct? Absolutely, Your Honor. Mr. Richardson would have an opportunity to be heard. The parole authority would see the disciplinary report, could hear his side of the story, and give, you know, whatever weight it felt. It could give no weight or, you know, weight however it wants, but it would certainly have all the facts in front of it, what the disciplinary officer heard as well as Mr. Richardson's take on what happened in the incident. Do you happen to know if the State raised a heck bar in the 1983 case? It has not, Your Honor. I'm not handling that case, but I have informed counsel that it's our position here, based on my knowledge and based on the facts here, that heck would not bar Mr. Richardson's 1983 case. Okay. Which also raises the issue of, from a jurisdictional perspective, of why Mr. Richardson should be held accountable here. You know, he instituted the 1983 case, and he is going to get federal review. I mean, it's not my client's position that this action is unreviewable by federal courts. He has an opportunity to proceed in a civil rights action. Okay. So given the high standard, the jurisdictional questions set out by both this court and the potential link is too speculative to confer jurisdiction, the district court properly recognized that and properly dismissed the case below. And if there are no further questions, I'm prepared to submit. Thank you, Your Honor. If we may please the Court in rebuttal, I would make two quick points. First of all, the Respondent cited the recent Skinner case as a support for his position. In Skinner, the result of the issue was only the right to obtain a DNA case and how that might be enforced, whether it was through habeas or through 1983. And the Court in Skinner stated that habeas is not available in that situation because all that the prisoner is asking for is a chance to reexamine the evidence or to get new evidence. He's not asking for the evidence may very well turn out to go against him. So that would not necessarily affect his prospects for release. Now, and also the Respondent mentioned the Ramirez case. Well, I would point out to the Court that in Ramirez, this Court relied upon the Seventh Circuit's decision in McCollum and stated that McCollum presumed that where a disciplinary infraction might delay a prisoner's release on parole, the prisoner may, by analogy to Pricer, challenge the disciplinary sentence through habeas corpus. And therefore, the determining factor is the likelihood of the effect of the over the overall length of the prison sentence upon the resolution of the habeas case. Thank you, Your Honor. Thank you. Thank you. And we appreciate counsel's argument. The matter is submitted at this time.
judges: O'grady, Hug, Paez